RECORD NO. 15-2582

In The

# United States Court Of Appeals
## For The Fourth Circuit

**RORIE N. WILSON,**

*Plaintiff – Appellant,*

v.

**CBS CORPORATION, F/K/A VIACOM, INC.,
F/K/A WESTINGHOUSE ELECTRIC CORPORATION,**

*Defendant – Appellee,*

and

**AC&S, INC.; AMCHEM PRODUCTS, INC.; C.E. THURSTON & SONS, INC.; COMBUSTION ENGINEERING, INC.;
DANA CORPORATION, Individually & As a Successor in Liability to Smith Kanzler; THE FLINTKOTE CO.;
GENERAL REFRACTORIES COMPANY; GEORGIA-PACIFIC CORPORATION; HALLIBURTON ENERGY
SERVICES CORP.; HONEYWELL, INC., agent of Allied-Signal, Inc. (Formerly Allied Corporation) Successor-in-
Interest to Bendix Corporation; HOPEMAN BROTHERS, INC.; INTERNATIONAL MINERALS &
CHEMICAL CORP., now known as I.M.C. Corporation; INTERNATIONAL PAPER CORPORATION, f/k/a
Champion International Corporation, f/k/a U.S. Plywood Corp. & Champion Papers, Inc.; OWENS-ILLINOIS, INC.;
RAPID AMERICAN CORPORATION; SELBY, BATTERSBY & CO., now known as SB Decking, Inc.;
UNIROYAL, INC.; WACO INSULATION, INC., now known as Waco, Inc.; GARLOCK, INC.;
GENERAL ELECTRIC CO.; METROPOLITAN LIFE INSURANCE CO.**
*Defendants.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT NEWPORT NEWS**

———————————

# BRIEF OF APPELLANT

———————————

**Paul A. Weykamp**
**LAW OFFICES OF**
  **PAUL A. WEYKAMP**
**16 Stenersen Lane, Suite 2**
**Hunt Valley, MD  21030**
**(410) 584-0660**

*Counsel for Appellant*

*Gibson*Moore Appellate Services, LLC
206 East Cary Street ♦ P.O. Box 1460 (23218) ♦ Richmond, VA  23219
804-249-7770 ♦ www.gibsonmoore.net

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __15-2582__    Caption: __Rorie Wilson v. CBS Corporation (f/k/a Westinghouse Electric Corp.)__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Rorie Wilson__
(name of party/amicus)

_____

who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

08/05/2015 SCC    - 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: _____          Date: ___January 11, 2016___

Counsel for: Rorie Wilson, Appellant

## CERTIFICATE OF SERVICE
**************************

I certify that on ___January 11, 2016___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Ms.Patricia Turner
Spotts, Fain LLC
411 East Franklin Street, Suite 600
Richmond, VA  23219
Tel: 804-697-2000

_____          January 11, 2016
(signature)                                        (date)

# TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES .................................................................. iii

STATEMENT OF SUBJECT MATTER AND
  APPELLATE JURISDICTION ..................................................... 1

STATEMENT OF ISSUES ............................................................... 2

STATEMENT OF THE CASE ........................................................... 2

SUMMARY OF ARGUMENT ........................................................... 4

    I.    MOTION FOR SUMMARY JUDGMENT .......................... 4

    II.   MOTION TO EXCLUDE TESTIMONY OF DR. R.
        LEONARD VANCE ............................................................. 4

ARGUMENT .................................................................................. 5

    STANDARDS OF REVIEW ......................................................... 5

        I.    MOTION FOR SUMMARY JUDGMENT ............................. 5

        II.   UNDER FEDERAL RULE OF EVIDENCE 702 ..................... 6

    DISCUSSION OF THE ISSUES .................................................. 7

        I.    ERROR IN GRANTING OF MOTION FOR
            SUMMARY JUDGMENT ..................................................... 7

        II.   ERROR IN GRANTING MOTION TO EXCLUDE
            TESTIMONY OF DR. R. LEONARD VANCE ..................... 14

            DR. R. LEONARD VANCE .................................................. 14

i

CONCLUSION ........................................................................................23

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

<u>**TABLE OF AUTHORITIES**</u>

<u>**Page(s):**</u>

<u>**Cases**</u>:

*Anderson v. Liberty Lobby, Inc.*,
      477 U.S. 242 (1986)..................................................................................5, 6

*Austin v. Clark Equip. Co.*,
      48 F.3d 833 (4th Cir. 1995) ...............................................................5

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
      509 U.S. 579 (1993)...........................................................................6, 7

*Felty v. Graves-Humphreys Co.*,
      818 F.2d 1126 (4th Cir. 1987)............................................................5

*Kumho Tire Co., Ltd., v. Carmichael*,
      526 U.S. 137 (1999) ..........................................................................6

*Marion George, Individually and as*
*Executrix of the Estate of Stuart George v. The Celotex Corporation*,
      914 F.2d 26 (1990) ...........................................................................19

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
      475 U.S. 574 (1986)...........................................................................5, 6

*United States v. Crisp*,
      324 F.3d 261 (4th Cir. 2003) ............................................................7

*Williams v. Griffin*,
      952, F.2d 820 (4th Cir. 1991) ...........................................................5

*Yates v. Ford Motor Co.*,
      No. 5:12-CV-752-FL, 2015 WL 3948303 (E.D.N.C. June 29, 2015).............6

**<u>Statute</u>:**

28 U.S.C. § 1442................................................................................1

**<u>Rules</u>:**

Fed. R. Civ. P. 56(c)..........................................................................5

Fed. R. Evid. 702...............................................................................6

## STATEMENT OF SUBJECT MATTER AND
## APPELLATE JURISDICTION

This action was first filed on July 3, 2002 in the Circuit Court for Newport News Virginia, alleging personal injuries due to exposure to asbestos-containing insulation products. (JA27-JA42). Defendant CBS Corporation (formerly known as Viacom, Inc. and Westinghouse Electric Corporation, hereinafter "Westinghouse") filed a notice of removal to the United States District Court for the Eastern District of Virginia ("District Court") on July 18, 2014 pursuant to 28 U.S.C. § 1442 which grants jurisdiction to District Courts jurisdiction where there is a question that involves federal officers -- in this action the plaintiff, Mr. Rorie Wilson worked at the Norfolk Naval Shipyard in Portsmouth, Virginia where he regularly worked aboard United States naval vessels (JA19-JA24). The amount in controversy is in excess of $75,000.00, as Mr. Wilson was diagnosed with mesothelioma on February 3, 2014 which diagnosis was confirmed by plaintiff's expert pathologist on June 29, 2015. (JA578-JA582). On September 8, 2015 Westinghouse filed a Motion in Limine to Exclude the Testimony of Dr. R. Leonard Vance (JA43-JA44) in addition to a Motion for Summary Judgment (JA45-JA46).

Hearing on Westinghouse's Motions was held on October 9, 2015. On November 19, 2015 the District Court granted Westinghouse's Motion for Summary Judgment (JA136-JA150) and Westinghouse's Motion to Exclude the Testimony of R. Leonard Vance (JA115-JA135).

1

On December 17, 2015 Plaintiff filed a Notice of Appeal with the District Court appealing both decisions rendered by the District Court on November 19, 2015 to the United States Court of Appeals for the Fourth Circuit ("the Court") (JA151-JA152).  The granting of said Motions left no matters before the District Court.

## STATEMENT OF ISSUES

I.  Whether the District Court erred in granting Westinghouse's Motion to Exclude the Testimony of R. Leonard Vance based on an erroneous understandings of the nature of the Plaintiff's exposure to asbestos dust from Westinghouse arc chutes.

II.  Whether the District Court erred in granting Westinghouse's Motion for Summary Judgment finding that there were no genuine issues as to any material fact –specifically no issues of material fact regarding the extent of plaintiff's exposure to asbestos dust from Westinghouse arc chutes.

## STATEMENT OF THE CASE

On July 3, 2002 the plaintiff filed a Motion for Judgment (as a Complaint was then known) in the Circuit Court for Newport News, Virginia seeking damages for personal injury related to his exposure to asbestos-containing insulation products while working at the Norfolk Naval Shipyard in Portsmouth, Virginia (JA36).  Mr. Wilson alleged that he worked at the shipyard from 1963 to 2001 during which time he was exposed to asbestos dust from asbestos insulation produced by various companies' products. (JA36). At the time of the filing of the complaint, Mr. Wilson sought general, compensatory and punitive damages for

having contracted asbestosis as a result of having been exposed to asbestos-containing products of defendants (JA38). During the pendency of his claim, Mr. Wilson's dropped his demand for punitive damages (JA106). On February 3, 2014, while Mr. Wilson's claim was pending in the Circuit Court for Newport News, he was diagnosed with peritoneal mesothelioma (JA679-JA683). Mr. Wilson was deposed in his case on August 21, 2014 and September 17, 2014 (discovery deposition) (JA183-JA217) and on November 14, 2014 and December 22, 2014 (De Bene Esse deposition JA218-JA281).

Plaintiff alleges exposure to asbestos dust from Westinghouse arc chutes in quantities sufficient to be a substantial contributing factor of his having developed mesothelioma. After discovery was completed, Westinghouse filed two Motions. The first was a Motion for Summary Judgment, arguing that there were no issues of material fact to support a conclusion that the plaintiff was exposed to asbestos dust from Westinghouse arc chutes (JA45). The District Court ruled that while there was a genuine issue of material fact as to whether or not the plaintiff was exposed to such dust, there was no issue of material fact as to whether the plaintiff was exposed in substantial enough amounts to cause his disease. (JA136, JA147). The second motion filed by Westinghouse was a Motion to Exclude the Testimony of Dr. R. Leonard Vance. (JA115). Dr. Vance opined in his expert report and at deposition that the plaintiff's exposure to asbestos dust from Westinghouse arc

chutes was in an amount above the then-accepted disease threshold limit value of 5 million fibers per cubic foot. (JA366). On November 19, 2015 the District Court granted both Westinghouse Motions. On December 17, plaintiff filed timely appeals to this Court as to both orders (JA151-JA152).

## **SUMMARY OF ARGUMENT**

### I.    MOTION FOR SUMMARY JUDGMENT

Plaintiff maintains that the court's granting of Westinghouse's Motion for Summary Judgment was based on several misapprehensions of evidence related to how plaintiff was exposed to dust from Westinghouse arc chutes. Plaintiff will show that ample evidence exists to establish his exposure to asbestos dust from Westinghouse arc chutes. In addition, the conflation by the court of arc chutes with air circuit breakers as a basis for granting the Motion for Summary Judgment was error.

### II.    MOTION TO EXCLUDE TESTIMONY OF DR. R. LEONARD VANCE

Plaintiff maintains that the District Court erred in determining that Dr. Vance's opinions are not reliable or relevant to this cause of action. Dr. Vance's reliance on the Hemeon criteria regarding the concentration of asbestos dust in visible non-metallic mineral dust to establish the quantitative range of exposure to asbestos dust that plaintiff experienced while working with Westinghouse arc chutes is reasonable and relevant to the case at bar.

4

**ARGUMENT**

STANDARDS OF REVIEW

I.    MOTION FOR SUMMARY JUDGMENT

In reviewing the grant or denial of a Motion for Summary Judgment, "an appellate court conducts a *de novo* review, applying the same standard as that applied by the District Court under Federal Rule of Civil Procedure 56(c)". *Williams v. Griffin*, 952, F.2d 820, 823 (4th Cir. 1991) (citing *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1127-28 (4th Cir. 1987). Pursuant to Rule 56(c), summary judgment is appropriate in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting Fed. R. Civ. P. 56(c)). Thus the moving party bears the burden of proving to the court that no material factual issues exist for trial. *Austin v. Clark Equip. Co.*, 48 F.3d 833, 835 (4th Cir. 1995). However, "the court must draw any permissible inference from the underlying facts as established in the record in the light most favorable to the non-moving party." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-588 (1986)). Once the moving party has met its burden, the non-moving party must present evidence which shows more than some "metaphysical doubt" that genuine and

material factual issues exist. *Matsushita*, 475 U.S. at 586. The non-moving party must present more than a "mere scintilla" of evidence in order to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 252. Instead, the non-moving party must convince the court that, upon the record as a whole, a rational trier of fact could find for the non-moving party. *Id*. at 248-249.

II.    UNDER FEDERAL RULE OF EVIDENCE 702

In determining the admissibility of expert testimony, Federal Rule of Evidence 702 provides the admission of an expert's testimony if that expert has "specialized knowledge" that will "help the trier of fact to understand the evidence or to determine a basic fact in issue". It is incumbent on the expert to base his testimony "on sufficient facts or data" to invoke "reliable principles and methods", and reliably apply "the principles and methods to the facts of the case". Fed. R. Evid. 702. The Rule requires the Court to inquire as to "1) whether the proposed expert's testimony is relevant; and 2) whether it is reliable". *Yates v. Ford Motor Co.*, No. 5:12-CV-752-FL, 2015 WL 3948303, at 81 (E.D.N.C. June 29, 2015)(citing *Kumho Tire Co., Ltd., v. Carmichael*, 526 U.S. 137, 141 (1999); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). In determining whether expert testimony is reliable, the Court may consider whether the expert's theory has been tested; whether the theory has been subjected to peer review and publication; the known or potential rate of error; the existence and

6

maintenance of standards controlling the technique's operation; and whether the technique has achieved general acceptance in the scientific community. *United States v. Crisp*, 324 F.3d 261, 266 (4th Cir. 2003)(quoting *Daubert*, 509 U.S. at 593-94). The Court must also consider the relevance of an expert's testimony by asking "whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591.

DISCUSSION OF THE ISSUES

I.    ERROR IN GRANTING OF MOTION FOR SUMMARY JUDGMENT

The plaintiff, Mr. Wilson, testified that he was exposed to asbestos dust from Westinghouse arc chutes attached to air circuit breakers installed on United States Naval vessels while working as an electrician and electrical engineer at the Norfolk Naval Shipyard in Portsmouth, Virginia. (JA181, l. 10 – JA191). Mr. Wilson testified as to his credentials to work on Westinghouse arc chutes, including his work Westinghouse ACB (air circuit breakers), 3200-amp frames, 1600 amp frames, 800 amp frames and 600 amp frames (JA181) for which Westinghouse built hundreds and hundreds of large circuit breakers, including on the USS Enterprise. (JA181). Plaintiff obtained his degree in electrical engineering in 1970 from Old Dominion University. During his studies studied physics, thermodynamics, power and machinery, vector analysis, structural strength

materials, circuit analysis, etc. (JA220-222).  Mr. Wilson specifically on circuit breakers in the Norfolk Naval Shipyard from 1970 to 1972 (JA227, l. 8 – JA230). During this time, he worked on circuit breakers - machines that "were the size of a washing machine".  (JA179, l. 17).  Mr. Wilson testified that he worked on Navy ACBs (air circuit breakers) on the USS Enterprise and USS Skate, among others. (JA227, l. 8 – JA230).  He worked on arc chutes, three arc chutes were attached to each air circuit breaker (JA205).  The arc chutes were roughly 3" x 3" x 18" tall. JA273, JA496).  The arc chutes looked like a rectangular tube, like a carton of cigarettes stacked on its end but more square.  (JA184, 185).  The circuit breakers are "huge circuit breakers. So when they throw an arc –when they open up, it's a big arc (JA186, l. 17 – JA188).  And they have this plasma arc.  That's what the arc chute is for.  They divert this energy up in the chutes to protect the rest of the circuit breaker from getting damaged.  So it's a high-temperature application." (JA186, l. 17 – JA187, l. 6).  Screws attach the arc chute to the circuit breaker. (JA198).  "[T]he plasma ball is directed up the chute and inside they have baffles that this energy is dissipated to.  So these baffles get burnt and black" (JA189, l. 5 – l. 12). Plaintiff worked on circuit breakers while working as a nuclear engineer from 1970 to 1972 (JA227).  Plaintiff believed that he was exposed to asbestos dust from the arc chutes (JA187 l. 3 – l. 11).  A circuit breaker was for the "protection of the circuit that supplies various pieces of equipment on the ship."

8

(JA227). The purpose of a circuit breaker is "to protect the power distribution from a short or a fault on the electrical system. It's designed to clear a fault... and to "open and disconnect the power from a short. So it wouldn't damage the power distribution equipment". (JA227-229). The arc chutes are a part of the circuit breaker. "When the breakers open, there's a huge fireball, plasma fireball created. And these arc chutes are on top of the circuit breaker, they're mounted on top of it. So the fire would go –or the fireball would go up these chutes and these baffles in side and dissipate the energy so it wouldn't burn any of the electrical wiring and contacts. And these arc chutes that receive all this energy they get damaged and burned up. (JA234 l. 10 – JA235 l. 3). The plaintiff testified:

> "Q.     Okay and you mentioned that you would unscrew the –the arc chute to take it off. What would you do next?
>
> A.     Repair it if we could.
>
> Q.     If it was pitted inside would there be any debris inside the arc chute?
>
> A.     Yeah. It would—
>
>             Ms Turner: Objection, form.
>
> A.     It would be burnt areas inside here and the dust and the deposits that would be burned away from the arc chutes and the baffle assembly would be down inside the beaker and on top of it.
>
> Q.     And what would you do with that debris?
>
>             Ms. Turner. Objection, Form.

9

A.    Just –just remove it by blowing it, by compressed air or by my mouth, just blowing it. 'Cause you're looking for other damage at the same time.  To get the dust and –out of the way so you can see.  You stick your head in there with a flashlight and you look around the best you can, looking for other damaged areas. And, of course it would be dusty and dirty and it would be on your hands and  --  and in the air also.

Q.    How would you rid the dust or –would you—would you need to rid the dust from the arc chute?

A.    Just blowing.  Just blowing it out with compressed air or wiping it off with a rag or –or a brush or anything you could to get it out of the way.

And what -- where did that dust come from?

        Ms. Tuner: Object to form.

        Mr. Joss:  Same objection

A.    The material that these arc chutes were made out of.

Q.    And when you would blow on that dust, what would happen?

A.    It would-

        Ms. Turner: Object to form.

A.    It would dissipate in the -in the atmosphere.  It would be all in the air and you would be down there looking at it with your -- with a flashlight looking for other damage and you'd blow it out and the -- the dust—the dust would be in the air.  Right down where you had your head. And you're breathing it."

(JA240 l. 1 – JA242 l. 3), testimony of Plaintiff Rorie Wilson)

Mr. Wilson explains in detail the type of work he was doing on arc chutes.

In addition, the plaintiff has submitted Westinghouse's Technical Manuals on

Naval Air Circuit Breakers. This document, prepared by Westinghouse, is a 50 page manual on its Navy ACBs (air circuit breakers). (JA497). Westinghouse Electric Corporation publications from naval archives describing air circuit breakers (ACBs) of a type that were used on United States Naval Vessels during the period that Mr. Wilson worked on such vessels. In fact, at page 7 of the Westinghouse ACB Air Circuit Breakers Technical Manual, Part 2, Chapter 2A, states:

"D-2. ARC CHUTES Ref. Fig. 3

FUNCTION

The arc chute (135) mounted above and surrounding the contact assembly of each pole, has the function of stretching and cooling the air drawn by the separating contacts so that it may be quickly extinguished and the circuit opened in the least possible time. The arc chutes are an extremely important part of the circuit breaker and the breaker should never be energized without their being mounted in place.

DESCRIPTION

Each arc chute consists of a number of metal plates (138) and (139) **_and asbestos plates_** (JA) supported in a laminated case (135) and held in place by a clamping plate (JA) and insulating tube spacers (146) and two screws (147) through the insulating spacers to the molded base (100). When the arc is drawn by the separating contacts, it moves up into the chute by magnetic and thermal action where it is quickly de-ionized and extinguished thus opening the circuit."

(_See_ JA505, Westinghouse Technical Manual, Part 2 Chapter 2A, page 7, emphasis supplied).

11

Similarly, at page 1-7 of the Westinghouse Technical Manual, Part 2, for Circuit Breakers, Navy Type ACB/Bureau of Ships, Department of the Navy, the circuit breakers are described at paragraph 1-2-1-4:

> "The arc chutes (118) are mounted above and surround the contact assembly of each pole, and serve to stretch and cool the arc drawn between the separating contacts so that the arc may be extinguished and the circuit opened in the least possible time. The arc chutes are an extremely important part of the circuit breaker and a breaker should never be energized until they are mounted in place.

> Each arch chute consists of a laminated case, ***a number of metal and asbestos plates***, a front and rear arc horn (119) and (117), and three arc deflectors. The plates and are horns are supported and held in place by the case."

> (*See* JA519, JA532: Westinghouse Technical Manual, Chapter 2, for Navy Type ACB Circuit Breakers, page 1-7, emphasis supplied).

Additionally, plaintiff's has submitted for consideration an unclassified United States Naval advisory published in February 2010. The subject of this advisory reads: "Guidance for Handling Asbestos Arc Chutes in Certain ACB Circuit Breakers". This advisory was disseminated to naval shipyards across the United States as well as internationally –including the Norfolk Naval Shipyard (JA573). The purpose of the Advisory is to:

> "[a]lert fleet units, shipyards, and maintenance activities that asbestos arc chutes may be installed in ACB circuit breakers and that special handling of these arc chutes may be required. 2. Background: NAVSEA has determined that several types of ACB circuit breakers may contain asbestos arc chutes. Arc chutes are located towards the top of the circuit breaker and are used to dissipate arc energy when

current is interrupted by opening of main contacts. Arc chutes are routinely handled by the fleet during circuit breaker shipyard maintenance and by shipyards and maintenance activities during repairs/overhauls. This advisory provides information on applicable ACB circuit breakers that may contain asbestos arc chutes and handling guidance for the fleet, shipyards, and maintenance activities. 3. The following ACB circuit breakers listed by manufacturer may contain asbestos arc chutes: A. SPD, ITE . . . B. General Electric: All types. C. Westinghouse: All DBN types." (JA575). The Advisory goes on to recommend "follow[ing] asbestos control procedures" should the arc chute be compromised. And at paragraph 7, "Shipyards and Maintenance activities should follow applicable local procedures and guidelines for handling asbestos." (JA576, JA577).

Based on Mr. Wilson's testimony as to the work he performed on arc chutes, the Westinghouse ACB (air circuit breaker) manuals and the Naval Advisory above, the court ruled that there is a genuine issue of material fact as to whether Mr. Wilson was exposed to asbestos dust from Westinghouse arc chutes. However, on the second issue raised in the District Court's Order –the issue of whether exposure to dust from Westinghouse Electric arc chutes was substantial enough to cause Mr. Wilson's mesothelioma- the court ruled that there was no genuine issue of material fact because the plaintiff could not establish that his exposure to dust from spent arc chutes contained asbestos dust in quantities sufficient to cause his disease. At the time plaintiff worked on the arc chutes, exposure to dust in quantities greater than 5 million particles/fibers per cubic foot were considered disease-producing.

13

In ruling on the extent to which the Plaintiff was exposed to asbestos dust from Westinghouse Electric arc chutes, the District Court ruled that the expert opinions of Dr. Vance were unreliable as his opinions were not based on "sufficient facts or data" to invoke "reliable principles and methods". page 9-10

## II.    ERROR IN GRANTING MOTION TO EXCLUDE TESTIMONY OF DR. R. LEONARD VANCE

Here, the two Motions granted by the District Court rely on the same assessment of Dr. Vance's opinions. Because the District Court found Dr. Vance's opinions to be both not relevant and not reliable, the court granted the Motion for Summary Judgment, reasoning that without Dr. Vance's testimony, plaintiff could not establish that his exposure to asbestos dust from Westinghouse arc chutes could not have been a substantial contributing factor to his having developed mesothelioma. Based on the same reasoning, the District Court granted Westinghouse's Motion to Exclude the Testimony of Dr. Vance.

### DR. R. LEONARD VANCE

Doctor R. Leonard Vance has offered the opinion that Mr. Wilson was exposed to asbestos dust in unsafe levels from Westinghouse arc chutes used on board United States Naval vessels, and that because of the danger posed by these exposures, the defendant Westinghouse had a duty to warn the plaintiff of the dangers to which he was exposed and that they failed to do so.

14

Dr. Vance's Curriculum Vitae is attached hereto (JA372).  He is well qualified to offer opinions on asbestos-related exposures and dangers.

Dr. Vance is a professional engineer with a B.S. and Ph.D. in chemistry from Virginia Tech and the University of Virginia respectively. He is also a Certified Industrial Hygienist who has worked in asbestos-related industrial hygiene for decades. In addition, in his professional career, Dr. Vance represented the United States Department of Labor on the Federal Asbestos Task Force; was the initial witness at OSHA hearings on the 1986 revisions to the OSHA Asbestos Standards; supervised the preparation of the 1986 revisions to the OSHA Asbestos Standards published in the Federal Register on June 20, 1986; managed the asbestos inspection program operated by VCU for the Virginia Department of Transportation for buildings demolished for highway construction, and  he is an instructor for EPA and the State of Virginia at the asbestos training center at the Virginia Commonwealth University -- a program he established there. (JA372).

Specifically, in its ruling to exclude Dr. Vance's testimony, the court opined that Dr. Vance's reliance on the studies and research of W.C.L. Hemeon could not be used to determine, what if any exposure the plaintiff had to asbestos dust from Westinghouse arc chutes.  (JA115). Dr. Vance relied on the research and studies of W.C.L. Hemeon to assess the degree to which Mr. Wilson was exposed to asbestos dust from Westinghouse arc chutes. (JA380 l. 21 – JA381 l. 18) In doing so, Dr.

15

Vance applied Hemeon's "sight-perception dust scale" which establishes quantitative ranges of exposure based on "visible dust" at short distances from the observer (JA471) where Hemeon discusses concentrations of mineral dusts (JA489) and with various types of lighting (JA492). Plaintiff Wilson specifically remembered using a flashlight to check on the dust in arc chutes (JA240, l. 20 – JA241 l. 2)

The District Court dismissed Dr. Vance's reliance on Hemeon's "visible dust" research because, as the court states because "Hemeon notes that these totals will vary depending on the type of dust particle involved". (JA130). The sites quotes Hemeon: "Free silica dust –for example- is only visible under the most favorable conditions of illumination, whereas non-metallic mineral dusts will typically be apparent 'in nearly all common conditions of illumination". (JA130). The Court continues: "Notably, Hemeon provides no estimates pertaining to the visibility of asbestos dust. Even so, Dr. Vance uses Hemeon as support for his assertion that visible dust indicates an unacceptable level of airborne asbestos". However, the fact is that asbestos dust *is* a non-metallic mineral dust, and Hemeon does address concentrations of (non-metallic mineral dust) in visible dust and is specifically listed in Hemeon's treatise. (JA489).

The court continues that because Hemeon's "sight perception dust scale" is only an estimate, it is unreliable and unacceptable for Dr. Vance to use these

16

studies for the proposition that the 'presence of visible dust" indicates that asbestos levels were greater than the accepted threshold limit value during the time the plaintiff was working of 5 million particles per cubic foot. (JA130).  While the "sight perception dust scale" does not provide a specific quantitative analysis of the number of fibers per cubic foot, the fact is that this scale establishes a range of exposure –with a floor being in excess of 5 million particles per cubic foot. (JA489, JA491).

So while it is true, as Dr. Vance testified, that one cannot give a specific quantitative assessment of the number of fibers per cubic foot using Hemeon's criteria, one can unequivocally say that plaintiff's exposure was well in excess of the threshold limit value of 5 million particles per cubic foot. (JA366).

The Court then states that the Dr. Vance could not name other scientific studies, publications or standards that would suggest that visible dust indicates a particular asbestos concentration, citing page *55* of Dr. Vance's deposition (JA290).  At his deposition, Dr. Vance testified:

"If a person is working with asbestos and you've got visible asbestos in the air, that's an unlawful condition.  It was -- that's going to be a condition that violates the 1968 ACGIH TLV (threshold limit value). . .  There's an asbestos NESHAP that applies parallel in any workplace while the OSAH standard is going on.  And if you've got visible emissions, then that's a violation of NESHAP apart

17

from any kind of OSHA violation". (JA288). Even today, visible dust standards are used as EPA standards.

Further during the course of his deposition, Dr. Vance testified:

"Q.    Are you -- so other than -- so since then in the last 50 years, are you aware of any scientific publications that say, above a certain level, you can see asbestos dust and, below a certain level, you can't?

A.    No. I'm aware of the standard that says, if it's visible, then it violates the EPA NESHAP regulation." (Dr. Vance deposition, JA290).

EPA NESHAP is the United States Environmental Protection Agency, National Emissions Standards for Hazardous Air Pollutants.

As Dr. Vance testified further:

"Q.    Is there some kind of scientific standard for -- that you're aware of for when asbestos dust in the air -- at what concentration asbestos dust in the air is visible?

A.    There's a publication on it, and there's a lot of literature on it.

Q.    What publication is that?

A.    There's Hemeon.

Q.    That's Hemeon '55?

A.    That's Hemeon '55 . . .

A.    Fleisher-Drinker in '46 adopted the *five million particle per cubic* foot standard as an appropriate standard that the standard derives from Dreason in '38."

(JA381).

18

Other significant researches in asbestos-related diseases – Fleisher-Drinker and Dreason also subscribed to a visible dust standard.

Hemeon's studies published in *Plant and Process Ventilation* (JA471-492), established that visible dust that contains asbestos necessarily contains fibers in excess of five million particles per cubic of air. Referencing Hemeon's text, Dr. Vance in his report:

> "As noted, Mr. Wilson worked with asbestos-containing products which released visible dust as a consequence of the work he performed with these products. The presence of visible dust indicates that asbestos levels were greater than the accepted threshold limit value during the time Mr. Wilson was working, *i.e.*, 5 million particles per cubic foot of 12 f/cc. When dust is present in the air in an indoor environment and it is visible, the dust concentration excess 12 f/cc (5 million parts per cubic foot)." (JA366)

As far as plaintiff is aware, Hemeon's standard for visible dust has never been disproven by anyone. And Hemeon's methods and findings regarding hazardous dust/working conditions have been upheld by courts to be relevant and probative including the United States Court of Appeals for the Second Circuit, in *Marion George, Individually and as Executrix of the Estate of Stuart George v. The Celotex Corporation*, 914 F.2d 26 (1990).

The Court states that Dr. Vance's failure to site other sources advancing the same theory prevents the Court from assessing, what if any, acceptance this theory finds within the relevant scientific community. (JA130). However, when asked who uses the "visible dust" standard during the course of his deposition, Dr. Vance

19

explained that NESHAP, an arm of the EPA uses the "visible dust" standard. Clearly this is an accepted standard used by a United States government agency concerned with environmental pollution.    (JA288, JA380, JA382, JA419 Deposition of Dr. Vance).

Finally, the court states that the Hemeon text does "not attempt to break down the concentration of different kinds of particles in the dust. . . There is no reliable evidence about how much of the dust plaintiff encountered contains asbestos, if any." (JA131).  Yet the testimony of Mr. Wilson and the information from the Westinghouse manuals suggest that the only friable part of the interior of an arc chute is the asbestos plates –which Mr. Wilson called "baffles". (JA168 l. 16 – 169).  The District Court further assessed Dr. Vance's opinions as unreliable based on the "McMullen Declaration" (JA493) -- a statement that speaks of air circulating in the housing of air circuit breakers not arc chutes, all of which makes the McMullen Declaration inapposite to Mr. Wilson's exposure to dust from arc chutes.    Plaintiff does not dispute that air circuit breakers had metal cabinets housing "through which ambient air and dust from the surrounding environment can pass freely from the outside to the inside of the cabinet".  The Westinghouse Manuals for Navy ACB (air circuit breakers) are replete with pages showing the significant size of ACBs and their housing –including diagrams. (JA497-572).  However, the plaintiff never argued that he was exposed to dust from air circuit

20

breakers generally –he testified he was exposed to dust from arc chutes.  Because of these conclusions, the District Court found Dr. Vance's testimony unreliable. The Court's conclusions are based on an erroneous conflating of "air circuit breakers" with "arc chutes" and an unwarranted dismissal of Hemeon's findings on industrial dusts, including asbestos dust.

It is uncontroverted that the spent arch chute –the interior of the chute that gets burnt up by the fire ball -- does not permit access either into the chute or out of the chute.  The courts reliance on the McMullen declaration is utterly misplaced as it speaks to air flowing in and out of the washing-machine sized air circuit breaker, *not* the arc chutes, which are small, sealed towers (JA496).  Furthermore, as regards the composition of the dust that is left in the arc chute after the plasma/fireball runs up the chute, it is entirely reasonable to conclude that all of the dust must necessarily be asbestos dust since the interior of the chutes are made up of steel plates and asbestos plates.  The description of these plates are found in Westinghouse's Manual (JA497, JA519).  When the fireball runs up the chute, it encounters, according to Westinghouse's manual, steel plates and asbestos plates. The dust found in the chute after a fireball could only reasonable have come from asbestos plates.  These plates are described by Westinghouse as being "asbestos plates" (JA505, JA532), it being reasonable to conclude that they are made of

21

asbestos, 100% asbestos, just as a juror could reasonably conclude that the steel plates are made of steel, 100% steel.

The District Court's additional finding that the "plaintiff has not identified the specific Westinghouse product that he alleges caused his health problems." Actually, the plaintiff has made a reasonable case that his exposure to asbestos dust from arc chutes was at a level as to cause disease. Dr. Maddox opines that Mr. Wilson's mesothelioma was caused in part by his exposures to asbestos (JA581).

The Court concludes its rejection of Dr. Vance's testimony by finding that his testimony is not relevant because he is "extrapolating" from the Roseman and Rabinovitz studies which are not related in type to the plaintiff's asbestos exposure. Dr. Vance relies much more heavily in his assessment of the dust concentration to which the plaintiff was exposed than either the Roseman or Rabinovitz studies. Hemeon's visible dust standard in the context of the plaintiff's work experience with arc chutes is sufficiently reliable and sufficiently reasonable that one could reasonably conclude that the plaintiff was exposed to asbestos fibers from the asbestos plates in Westinghouse arc chutes substantially enough to cause his mesothelioma.

## **CONCLUSION**

Motion for Summary Judgment is not to be granted when -- drawing all permissible inferences in the light most favorable to the non-moving party— there exists any genuine issue of material fact.  In the case at bar, a material issue exists as to whether the plaintiff, Mr. Wilson, was exposed to asbestos dust from Westinghouse arc chutes in amounts that are in excess of 5 million particles per cubic foot.

Similarly, the testimony of Dr. Vance is reliable and relevant. Visible dust standards such as those articulated by Hemeon are still used today by the EPA/NESHAP and has not been disproven to this very day. Further, Dr. Vance's testimony regarding Hemeon's visible dust standard is directly relevant to Mr. Wilson's asbestos dust exposure history.

Date: April 27, 2016               Respectfully submitted,

                               /s/Paul A. Weykamp
                               Paul A. Weykamp
                               Law Offices of Paul A. Weykamp
                               16 Stenersen Lane, Suite 2
                               Hunt Valley, MD  21030
                               Tel: 410-584-0660
                               pweykamp@weykamplaw.net

                               *Counsel for Appellant Rorie Wilson*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)
**Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements**

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    this brief contains 5,441 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    this brief has been prepared in a proportional spaced typeface using Microsoft Word in 14 point Times New Roman.


Dated: April 27, 2016          /s/ Paul A. Weykamp
                               Paul A. Weykamp

                               *Counsel for Appellant*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on April 27, 2016, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF System, which will send notice of such

filing to all registered CM/ECF users:

The necessary filing and service were performed in accordance with the

instructions given to me by counsel in this case.

/s/ Shelly N. Gannon
Shelly N. Gannon
GIBSON MOORE APPELLATE SERVICES, LLC
P.O. Box 1460
Richmond, VA  23218
(804) 249-7770
